UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; BOARD OF TRUSTEES OF THE LABORERS VACATION-HOLIDAY TRUST FUND FOR NORTHERN CALIFORNIA; BOARD OF TRUSTEES OF THE LABORERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA; and BOARD OF TRUSTEES OF THE LABORERS TRAINING AND RETRAINING TRUST FUND FOR NORTHERN CALIFORNIA,<br><br>    Plaintiff(s),<br><br>    v.<br><br>RENE AMILCAR TORRES, an individual dba VECTOR GENERAL ENGINEERING CONTRACTORS INC,<br><br>    Defendant(s).<br>_____/ | No. C-12-02633 DMR<br><br>**REQUEST FOR REASSIGNMENT; REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [DOCKET NO. 64]** |

Plaintiffs Boards of Trustees for Laborers Trust Funds move the court pursuant to Federal Rule of Civil Procedure 55(b)(2) for default judgment against Defendant Rene Amilcar Torres, an individual dba Vector Engineering Contractors Inc. Mot. [Docket No. 64] at 1. Plaintiffs ask the court to order Defendant to pay unpaid employee fringe benefit contributions and related interest and liquidated damages, and attorneys' fees and costs. The court held a hearing on the motion on October 30, 2014; Defendant did not appear.

Defendant has not filed a consent to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). Therefore, the court requests that this case be reassigned to a District Judge and issues this recommendation that the motion be **granted**.

**I. BACKGROUND**

**A. Factual Allegations**

Plaintiffs are the Boards of Trustees for the Laborers Health and Welfare Trust Fund for Northern California, the Laborers Vacation-Holiday Trust Fund for Northern California, the Laborers Pension Trust Fund for Northern California, and the Laborers Training and Retraining Trust Fund for Northern California ("the Trust Funds"). The Trust Funds, established under Trust Agreements,[1] consist of all employee fringe benefit contributions that are to be made by employers pursuant to collective bargaining agreements. Second Am. Compl. ["SAC," Docket No. 39] at ¶¶ 3-6; Lauziere Decl. [Docket No. 65] ¶¶ 10-11, Exs. A-B. The Trust Funds are multi-employer benefit plans within the meaning of sections 3 and 4 of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002, 1003. SAC at ¶ 5.

Vector Engineering Contractors is an employer within the meaning of sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5) and 1145, and an employer in an industry affecting commerce within the meaning of section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. SAC at ¶ 7. At all relevant times, Torres was and is the sole owner of Vector Engineering Contractors and operated and controlled Vector Engineering Contractors, such that Vector Engineering Contractors and Torres constituted a single employer. *Id.*

By virtue of his membership in the Engineering and Underground Contractors Association ("EUCA"), Torres became bound to a written collective bargaining agreement with the Northern California District Council of Laborers ("Laborers Union") entitled the Laborers' Master Agreement for Northern California ("Master Agreement"). SAC at ¶ 9; Lauziere Decl. at ¶ 16, Ex. G. In agreeing to be bound by the Master Agreement, Torres further agreed to be subject to and bound by all provisions and conditions of the written Trust Agreements which established the Trust Funds. SAC at ¶ 9.

The Master Agreement requires that employers pay contributions to the Trust Funds for each hour their employees work as laborers. Lauziere Decl. at ¶ 16, Ex. G. Employers are required to

---

[1] Plaintiffs represent that the Trust Agreements for all four of the Trust Funds contain the same terms and conditions as the Trust Agreement for the Pension Trust Fund for Northern California. Lauziere Decl. ¶ 11. Therefore, any references to the "Trust Agreement" apply to the Trust Agreements for all of the Trust Funds. Lauziere Decl., Exs. A-E.

2

pay the employee fringe benefit contributions on or before the 25th day of the month immediately succeeding the month in which the employee's work was performed. An employer who fails to make the required contributions on or before the 25th day of the month is subject to interest on the delinquent contribution at a rate of 1.5% per month, as well as liquidated damages, which are set at $150 for each delinquent contribution. SAC at ¶ 10; Lauziere Decl. at ¶ 16, Ex. H (Liquidated Damage Program - Board Policy); Ex. G. The Trust Agreement permits Plaintiffs to file a lawsuit to recover payment of delinquent contributions and all attorneys' fees and costs incurred. SAC at ¶ 10; Lauziere Decl. at ¶ 13, Ex. D.

Plaintiffs assert that they have performed all conditions required of them by the Master Agreement. SAC at ¶ 12. Plaintiffs allege that Defendant has failed to meet all of his obligations by failing to report and by failing to pay all employee fringe benefit contributions for the periods December 2009, December 2010, and December 2011 in the principal amount of $35,354.23, and by failing to pay interest and liquidated damages on the unpaid and delinquent employee fringe benefit contributions for those periods. SAC at ¶ 13.

Plaintiffs filed the current action on May 22, 2012 pursuant to section 301 of the LMRA (29 U.S.C. § 185), and sections 502(a)(3) and 502(e)(1) of ERISA (29 U.S.C. §§ 1132(a)(3) and 1132(e)(1)), to recover due and unpaid benefit contributions, interest, liquidated damages, attorneys' fees, and filing costs, and amended their complaint twice. SAC at ¶ 1; *see also* Docket Nos. 1, 11.

**B. Procedural History**

Plaintiffs initially filed suit against Vector General Engineering and Rene Torres in his capacity as an officer of Vector General Engineering. Docket No. 1. After Plaintiffs served the summons and complaint on these defendants, Plaintiffs requested that the clerk enter default against them; the clerk did so. Docket Nos. 5-8. Subsequently, Plaintiffs lifted the entry of default against these defendants and filed a First Amended Complaint, because Plaintiffs discovered that the above defendants had been erroneously sued, as Torres had signed the Master Agreement on behalf of a different entity, Vector Engineering Contractors Inc. Docket Nos. 11, 17. The First Amended Complaint named Torres dba Vector Engineering Contractors Inc. as Defendant. Docket No. 11.

For several months after Plaintiffs filed the First Amended Complaint, the parties attempted to resolve their dispute informally. Docket No. 25. Torres agreed to submit to an audit, and Plaintiffs moved for and received the court's permission to file the SAC to include the amounts owed to Plaintiffs based on the audit. Docket Nos. 27, 31, 38, 39.

Apparently this first attempt to resolve the dispute informally was unsuccessful, as Plaintiffs filed a motion for default judgment on August 15, 2013. Docket No. 43. The court denied this motion for default judgment because the clerk had not yet entered default against the newly named Defendant. Docket Nos. 45, 48, 52. After the court denied this motion, Defendant contacted Plaintiffs and expressed a willingness to resolve the matter outside of court, and the parties expected to reach a settlement agreement. Docket No. 54. The parties apparently negotiated for several more months but were unable to reach a settlement, and on July 31, 2014, Plaintiffs' counsel filed a motion for entry of default against Defendant Torres dba Vector Engineering Contractors Inc., and the clerk entered default the following day. Docket Nos. 59, 61. This motion for default judgment followed.

## II. DEFAULT JUDGMENT

### A. Legal Standard

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment following a defendant's default. Fed. R. Civ. P. 55(b)(2). Whether to enter a judgment lies within the court's discretion. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001) (citations omitted).

Before assessing the merits of a default judgment, a court must confirm it has subject matter and personal jurisdiction, as well as ensure adequacy of service on the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these requirements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

4

*Eitel*, 782 F.2d at 1471-72 (citation omitted).  In this analysis, a "court takes 'the well-pleaded factual allegations' in the complaint 'as true'" (*DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007)), "except those relating to the amount of damages."  *Garamendi v. Henin*, 683 F.3d 1069, 1080 (9th Cir. 2012) (citations omitted).

**B. Analysis**

This court has subject matter jurisdiction over this case pursuant to 29 U.S.C. §§ 185 (granting labor union organizations power to sue employers in federal court) and 1132 (empowering ERISA plan fiduciaries to bring civil actions to enforce plan terms).  Defendant qualifies as an "employer" under section 3(5) and section 515 of ERISA, 29 U.S.C. §§ 1002(5), 1145, and as an employer in an industry affecting commerce within the meaning of section 301 of the LMRA, 29 U.S.C. § 185.  SAC at ¶ 7.  The court exercises personal jurisdiction over Defendant because Torres does business as Vector Engineering Contractors, which is a California corporation with its principal place of business located in South San Francisco, California.  SAC at ¶ 7.

The Federal Rules of Civil Procedure allow for service on an individual by delivering a copy of the summons and complaint to the individual personally.  Fed. R. Civ. P. 4(e)(2)(A).  The court has reviewed the proof of service and the record and finds that the summons and complaint were properly served on Defendant via personal service.  *See* Docket No. 51.

Turning to the *Eitel* factors, under the first factor Plaintiffs will suffer great prejudice if the court does not enter a default judgment because Plaintiffs are otherwise likely to be "without other recourse for recovery."  *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *see also U.A. Local No. 467 Trust Fund v. Hydra Ventures, Inc.*, Case No. 12-CV-03746 EMC, 2013 WL 1007311 at *6 (N.D. Cal. Mar. 13, 2013) (first *Eitel* factor weighed in favor of default judgment for plaintiffs trust funds against defendant employer who had failed to make employee benefits contributions because plaintiffs would otherwise likely be without a remedy).

Considering the second and third *Eitel* factors, the SAC sufficiently pleads the elements of a violation of 29 U.S.C. § 1145[2] by alleging that Defendant is an employer obligated under the collective bargaining agreement to make contributions to the Trust Funds but failed to do so in accordance with the terms of that agreement. SAC at ¶¶ 16-20. Plaintiffs' Accounts Receivable Manager submitted a declaration stating that Plaintiffs audited Defendant and discovered that he failed to report and thus failed to pay contributions due for several months. Lauziere Decl. at ¶ 17. Plaintiffs produced a summary of the audit results showing the number of hours of covered work for which contributions were due, but not paid. Lauziere Decl. at ¶¶ 17-19, Exs. I (Statement of Contributions Due The Laborers Trust Funds [Not Reported/Not Paid]), J (Audit Report), and K (Statement of Interest and Liquidated Damages Due [Not Reported/ Not Paid]). Thus, Plaintiffs submitted a legally sufficient complaint that is likely to prevail on the merits of the Section 1145 claim, fulfilling the second and third *Eitel* factors.[3]

The fourth *Eitel* factor is the sum of money at stake in the action. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trs. v. Core Concrete Constr., Inc.*, Case No. 11-CV-02532 LB, 2012 WL 380304 at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472). However, "when the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Core Concrete*, 2012 WL 380304 at *4 (recommending default judgment where the amount of money sought against the employer was supported by the evidence and required by both the collective bargaining agreement and 29 U.S.C. § 1132). Here, the total sum of actual and statutory damages, interest, attorneys' fees, and costs that Plaintiffs seek to recover is $104,084.55.[4] Mot. 14. This sum is appropriate as it is

---

[2] Section 1145 provides, in relevant part, that "[e]very employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

[3] The SAC also includes claims for breach of the collective bargaining agreement and breach of fiduciary duty. *See* SAC at ¶¶ 8-15, 21-26. Plaintiffs do not seek default judgment on these claims.

[4] This sum represents: $35,354.23 (unpaid contributions), $23,555.25 (interest), $23,555.25 (additional award pursuant to section 1132(g)(2)(C)), $19,289 (attorneys' fees), and $2,330.82 (costs). Mot. at 7.

supported by the evidence, tailored to Defendant's alleged misconduct, and properly calculated, as discussed below.

With respect to the fifth *Eitel* prong, Defendant has not appeared in this action, nor contested any of Plaintiffs' material facts. Finally, reviewing the record, there is nothing that suggests Defendant defaulted due to excusable neglect. Examining these facts in the aggregate, the court finds that the first six *Eitel* factors outweigh the Federal Rules of Civil Procedure's strong preference for a decision on the merits. The court therefore recommends that Plaintiffs' motion for default judgment be granted.

### III. DAMAGES

**A. Legal Standard**

To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see Pepsico*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). With respect to cases arising out of ERISA, the statute declares the following:

> in any action . . . by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--
>
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Interest on unpaid contributions is determined by using the rate provided under the plan. *Id.*

**B. Unreported, Unpaid Contributions**

Plaintiffs performed an audit of Torres's books and records. Lauziere Decl. at ¶ 17. In the audit, Plaintiffs discovered that Torres failed to report and thus failed to pay contributions due and

7

owning for the periods December 2009, December 2010, and December 2011. Lauziere Decl. at ¶¶ 17-18, Exs. I, J. The total principal balance due on those unreported, unpaid contributions totals $35,354.23. Lauziere Decl. at ¶ 18, Ex. J.

As described above, under the Master Agreement, an employer who fails to make the required contributions on or before the 25th day of the month is subject to interest on the delinquent contribution at a rate of 1.5% per month, as well as liquidated damages, which are set at $150 for each delinquent contribution. SAC at ¶ 10; Lauziere Decl. ¶ 16, Ex. H. Plaintiffs calculate interest for the unreported, unpaid contributions to be $23,555.25, and liquidated damages for the three unreported, unpaid contributions to be $450. Lauziere Decl. at ¶ 19, Ex. K.

"It is settled Ninth Circuit law that [an award under Section 1132(g)(2)] is mandatory and not discretionary." *Operating Engineers Pension Trust v. Beck Engineering & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984) (noting that the statutory language in Section 1132(g)(2) that "the court *shall* award the plan" unpaid contributions, interest, the greater of interest or liquidated damages, and reasonable attorneys' fees). For a mandatory award under section 1132(g)(2), three requirements must be satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award. *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (citations omitted). The first requirement is met as the SAC alleges that Defendant was delinquent with contributions and related payments for interest and liquidated damages. SAC at ¶¶ 13, 16-20; Lauziere Decl. at ¶¶ 17-23. The second requirement is met with the entry of judgment against Defendant as the court recommends for the reasons contained herein. Finally, the third prong is met through the parties' Master Agreement, which provides for liquidated damages and interest on delinquent contributions. Lauziere Decl. at ¶¶ 13, 16; Ex. G; Ex. H. *See also Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mechanical Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989) (section 1132(g)(2)(C)(ii) applies when "the plan provides for liquidated damages"). Pursuant to 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are entitled to an additional award in the amount equal to the greater of the interest on the unpaid contributions or liquidated damages at the contract rate. *Accord Operating Engineers*, 746 F.2d at 569 (where the prejudgment interest exceeded the

amount of liquidated damages available under the parties' agreement, "the district court was . . . statutorily required to award the [plaintiffs] an amount equal to the prejudgment interest as liquidated damages"). Since liquidated damages are less than interest, the court recommends that Plaintiffs receive additional statutory damages of $23,555.25.

The court thus recommends that Plaintiffs be awarded $82,464.73 the total due for Defendant's unreported, unpaid contributions, with interest and additional statutory damages.

### C. Attorneys' Fees and Costs

Plaintiffs have incurred $19,289 in attorneys' fees representing 65.3 hours billed by three attorneys at Bullivant Houser Bailey PC: (1) Edward Winchester, an associate, 58.9 hours at the rate of $290 per hour; (2) Ronald L. Richman, a managing partner and shareholder at the same firm, 5.6 hours at a rate of $345 per hour; and (3) Susan Olson, senior counsel, 0.8 hours at a rate of $345 per hour. Winchester Decl. [Docket No. 66] at ¶¶ 5-7; Ex. B; Supp. Br. [Docket No. 72] at 4. Winchester has practiced law since 2010. Richman has practiced law since 1984 and handled ERISA Trust Fund litigation since 1995, representing Plaintiffs at Bullivant Houser Bailey PC since 2006 and previously, at Stanton, Kay, and Watson from 1995-2002. Winchester Decl. at ¶ 4. Olson was admitted to the California bar in 1991 and has more than 23 years of experience handling ERISA litigation. Supp. Br. at 4.

Counsels' fees of $345 per hour for partners and $290 for associates are reasonable San Francisco Bay Area rates for ERISA claims. *See, e.g.*, *Oster v. Std. Ins. Co.*, 768 F. Supp. 2d 1026, 1035 (N.D. Cal. 2011) (approving hourly rate of $400 for associates); *Langston v. N. Am. Asset Dev. Corp. Grp. Disability*, Case No. 08-CV-02560 SI, 2010 WL 1460201, at *2 (N.D. Cal. Apr. 12, 2010) (approving hourly rate of $550 for partner); *Bd. of Trustees of Cement Masons Health & Welfare Trust Fund for N. California v. C & C Concrete Inc.*, No. C 10-03343 LB, 2013 WL 2456560 at *9 (N.D. Cal. June 6, 2013) (approving Richman's discounted rate of $325 per hour).

Having reviewed Plaintiffs' billing records, the court finds that the 65.3 hours expended are reasonable, given the procedural history of the case, Plaintiffs' difficulty in determining Defendant's identity, and the parties repeated but unsuccessful attempts to settle without intervention from the court. *See C&C Concrete*, 2013 WL 2456560 at *10 (approving expenditure of 77.8 hours, which

1  included drafting multiple complaints, documents related to multiple defaults, case management
2  statements and a motion for default judgment). The court therefore recommends that Plaintiffs
3  recover $19,289 in attorneys' fees.

4  Federal Rule of Civil Procedure 54(d)(1) grants district courts the discretion to award costs
5  to prevailing parties. Fed. R. Civ. P. 54(d)(1); *Marx v. General Revenue Corp.*, 133 S. Ct. 1166,
6  1172 (2013). Plaintiffs have incurred $2,330 in reasonable costs in the action to date. Winchester
7  Decl. ¶ 8, Ex. B (describing filing fees and service and document production costs). The court
8  therefore recommends that Plaintiffs be granted $2,330 in costs.

### IV. Conclusion

For the foregoing reasons, the court recommends that the District Court **grant** Plaintiffs' motion for default judgment. The court further recommends that the District Court award Plaintiffs unpaid contributions in the amount of **$35,354.23**, interest in the amount of **$23,555.25**, statutory damages in the amount of **$23,555.25**, attorneys' fees in the amount of **$19,289.00**, and costs amounting to **$2,330.82**, for a total of **$104,084.55**.

Immediately upon receipt of this order, Plaintiffs shall serve a copy of this order on Defendant and file proof of service with the court. Any party may file objections to this report and recommendation with the District Judge within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Civ. L.R. 72-2.

IT IS SO ORDERED.

Dated: November 4, 2014



DONNA M. RYU
United States Magistrate Judge